IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMANDA LEWIS,

    Plaintiff,

  v.

ACTIVISION BLIZZARD, INC., and BLIZZARD ENTERTAINMENT, INC.,

    Defendants.
_____/

No. C 12-1096 CW

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 39)

    Plaintiff Amanda Lewis brought this copyright infringement action against her former employer, Defendants Activision Blizzard, Inc., and Blizzard Entertainment, Inc. (collectively, Blizzard). Blizzard moves for summary judgment. Plaintiff opposes the motion. After considering the parties' submissions and oral argument, the Court grants the motion.

BACKGROUND

    The following facts are undisputed. Blizzard is a videogame company that develops, markets, and distributes computer games. Secrest Decl. ¶ 26. One of its most popular games is World of Warcraft, a "multiplayer role-playing game, in which thousands of people play simultaneously in a 'virtual world' created by Blizzard." Id.

    Plaintiff was employed at Blizzard as a "game master" for World of Warcraft from May 2005 through August 2006. Lewis Decl. ¶¶ 2-4. In that role, she was responsible for answering customers' questions about the game, assisting them when they encountered difficulties with other players or game mechanics, and solving any problems with game functionality. Id. ¶¶ 3-5.

According to the "Game Master Job Description" in Blizzard's training manual,

> Game Masters are customer service specialists with expert knowledge of the game who are [] present as characters within World of Warcraft's epic fantasy setting to provide assistance and guidance to players while also coordinating world functionality.  In this capacity, GM's serve as the direct link between Blizzard and its customers.  Additionally, GM's are responsible for in-game customer support, helping manage our online community, and assisting with the creation of content during the ever ongoing development of the game.

Secrest Decl. ¶ 29, Ex. P, April 2005 Training Manual, at 4. Plaintiff received a copy of this manual during an employee training session that she attended during her first week on the job.  Lewis Decl. ¶ 6; Mayer Decl., Ex. U, Lewis Depo. 50:4-:6, 51:11-:20.

In July 2005, a Blizzard game writer sent an e-mail to all game masters inviting them to participate in "open auditions" for voiceover work related to World of Warcraft.  Farr Decl. ¶ 3, Ex. A, 7/7/2005 E-Mail, at 1.  Roughly one hundred and twenty game masters signed up to participate in the auditions, including Plaintiff.  Id.  After Plaintiff auditioned in late July, she was invited to record a voice for a newly created game character called the "baby murloc."  Farr Decl. ¶¶ 5-6.  The character was conceived by Blizzard's design team as a "cuter, smaller version of the original murloc," a mythical creature featured in earlier versions of the game.  Id.  Before the recording session, Blizzard's sound engineer told Plaintiff that the character would be unveiled at BlizzCon 2005, an annual fan convention, and used in videos to promote the game.  Mayer Decl., Ex. U, Lewis Depo. 125:18-:24.  He did not say whether Blizzard would ultimately use

2

1  the recording for any other purpose -- such as to voice any
2  characters within the game itself -- and Plaintiff never asked
3  whether the recordings might be used outside of BlizzCon.  Id.
4  Lewis Depo. 104:16-105:4.

5  On September 7, 2005, Plaintiff participated in a recording
6  session at Blizzard's offices.  Lewis Decl. ¶ 12.  The session
7  lasted about ten minutes and yielded roughly five minutes of raw
8  audio recording.  Farr Decl. ¶¶ 9, 23.  Blizzard's sound engineer
9  subsequently edited the raw recording to produce a condensed set
10 of sound files.  Id. ¶¶ 20-21.

11 Two weeks later, Plaintiff was invited to participate in
12 another recording session to develop a short "dance" song for the
13 baby murloc character using her voice.  Id. ¶ 4; Lewis Decl. ¶ 18.
14 On September 22, Plaintiff attended a second recording session at
15 Blizzard's offices.  Farr Decl. ¶ 15; Lewis Decl. ¶¶ 19-20.  The
16 session yielded roughly four minutes of raw audio recording, which
17 Blizzard's sound engineer once again edited and condensed into
18 smaller sound files.  Farr Decl. ¶¶ 18-21.  Plaintiff was
19 compensated for her participation in both recording sessions at
20 her usual hourly rate and never sought additional compensation for
21 her work on either recording.  Mayer Decl., Ex. U, Lewis Depo.
22 137:16-138:7.

23 Sometime in 2006, shortly before she was terminated by
24 Blizzard, Plaintiff discovered that her voice from the recordings
25 had been used to create a baby murloc character that appeared in
26 the game itself.  Lewis Decl. ¶ 23.  Although Plaintiff was
27 "surprised to find out that [her] voice had been used beyond the
28 scope of what [she] had been told it would be used for," she did

3

not convey her surprise to any of her friends, co-workers, or supervisors. Mayer Decl., Ex. U, Lewis Depo. 148:5-:24, 151:11-:25; Lewis Decl. ¶ 22.

In November 2010, Plaintiff filed this lawsuit against Blizzard alleging that the company had infringed her copyright in the baby murloc recordings by using parts of the recordings in the game without her consent. Plaintiff also asserted various state claims against Blizzard in her complaint but those claims were dismissed in October 2012. Docket No. 26, Order on Motion to Dismiss Second and Third Claims for Relief, at 13. In August 2013, Blizzard filed the instant motion for summary judgment on Plaintiff's sole remaining claim for copyright infringement.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

4

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

5

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

## DISCUSSION

Blizzard argues that it is entitled to summary judgment on Plaintiff's copyright infringement claim for two reasons. First, it contends that Plaintiff does not own a copyright in the baby murloc recordings because the recordings constitute a "work made for hire" under the Copyright Act, 17 U.S.C. § 201(b). Second, and in the alternative, Blizzard argues that it is a joint author of the recordings and thus cannot be held liable for copyright infringement.

I.  Work Made for Hire

The Copyright Act provides, "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). The Act defines a "work made for hire" as "a work

6

prepared by an employee within the scope of his or her employment." Id. § 101.

"Although the Copyright Act does not define either 'employee' or 'scope of employment,' these terms must be 'understood in light of the general common law of agency.'" U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1015 (9th Cir. 2012) (citing Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739-41 (1989)). Various circuits, including the Ninth Circuit, rely on the three-prong "scope of employment" test set forth in section 228 of the Restatement (Second) of Agency to determine whether a given work was "made for hire" under the Copyright Act. Id. Under that test, an employee's conduct falls "within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the [employer]." Restatement (Second) of Agency § 228.

Here, the undisputed facts demonstrate that Plaintiff was an employee of Blizzard and that her contributions to the baby murloc recordings fell squarely within the scope of her employment.

A.   "Employed To Perform"

Blizzard's training manual states that game masters are responsible for "assist[ing] with the creation of content during the ever ongoing development of the game." Secrest Decl. ¶ 29, Ex. P at 4. Plaintiff admits that she read this job description in the training manual when she first began working at Blizzard in 2005. Lewis Decl. ¶ 6. She argues, however, that because she was not required to produce original content for the game on a regular

7

1 basis, her contributions to the baby murloc recordings do not
2 qualify as the kind of work she was "employed to perform."
3      This argument fails for several reasons.  First, as noted
4 above, the training manual Plaintiff received specifically
5 identified content-creation as one of her official
6 responsibilities.  Even if she only performed this responsibility
7 on occasion, it was still expressly listed in her job description
8 and therefore fell within the scope of her stated duties.  What's
9 more, producing content is very similar to the other duties that
10 game masters were routinely expected to perform.  Although
11 Plaintiff seeks to cast game masters as customer service
12 representatives who lacked any influence over game content, she
13 acknowledged in her declaration that game masters frequently
14 exercised direct control over elements of the game world.  See id.
15 ¶ 7 ("I would go into the game world about 3-5 times every shift
16 to assist players who were experiencing issues such as becoming
17 stuck, not receiving 'loot,' or to remove a monster in an improper
18 location.").  Thus, Plaintiff's own evidence suggests that game
19 masters did not simply interact with Blizzard's customers but also
20 engaged directly with game content.
21      Blizzard's evidence confirms that game masters sometimes
22 produced original content for the game.  The company's human
23 resources manager asserted in her declaration that other game
24 masters besides Plaintiff were asked to contribute -- and did, in
25 fact, contribute -- original content to the game, including visual
26 artwork and designs, while Plaintiff was employed there.  Secrest
27 Decl. ¶ 30.  The human resources manager also asserted that, in
28 addition to their day-to-day responsibilities, game masters were

8

"expected to assist with any other [game]-related tasks that they may be asked to do." Id. ¶ 27.  Plaintiff does not dispute either of these assertions.

Indeed, Plaintiff's own description of her experience recording the baby murloc voice suggests that this work fell within the scope of her ordinary job duties.  Plaintiff testified at her deposition that she was paid her normal hourly wage for participating in each recording session and never sought any additional compensation for her voice work.  Mayer Decl., Ex. U, Lewis Depo. 134:16-:25, 136:2-:7.  In addition, she admitted that her supervisor praised her work on the recordings during a November 2005 review of her job performance.  Id., Lewis Depo. 147:4-148:2; see also Secrest Decl. Ex. Q, Employee Review Form, at 1 ("Amanda was thrilled to be chosen as the voice of the baby murloc.").  Taken together, this evidence indicates that both Plaintiff and her co-workers understood that her contributions to the baby murloc recordings constituted the kind of work she was "employed to perform."

Plaintiff attempts to analogize this case to TAP Worldwide, LLC v. Becker, where a court found that an export manager for an auto-parts manufacturer was acting outside the scope of his employment when he designed a software program to expedite the processing of export shipments.  2010 WL 2757354, at *4 (C.D. Cal.).  TAP Worldwide is inapposite, however, because in that case the export manager's job description did not include software development.  In fact, the court specifically used this fact to distinguish TAP Worldwide from another case where "it was found that the employee's job description could be interpreted to

9

include the development of the computer program that was at issue." Id. (emphasis added; citing Genzmer v. Public Health Trust of Miami-Dade County, 219 F. Supp. 2d 1275 (S.D. Fla. 2002)). The TAP Worldwide court also noted that the export manager had not received any "praise" or "guidance" from his supervisor regarding the software he developed, which further suggested that that he was not "employed to perform" that kind of work. Id. Here, in contrast, Plaintiff has acknowledged not only that her job description includes "the creation of [game] content" but also that her supervisor praised her contributions to the baby murloc recordings. Thus, TAP Worldwide is distinguishable from the present case.

B.   "Substantially Within Authorized Time and Space Limits"

Both of Plaintiff's recording sessions were conducted at Blizzard's offices, using Blizzard's equipment, and under the supervision of Blizzard's sound engineer. Farr Decl. ¶¶ 8-16. Furthermore, both sessions occurred on weekdays during normal working hours while Plaintiff was employed at Blizzard. Although the sessions took place on her days off, Plaintiff received her normal hourly wage for all of the time she spent in the recording studio. Finally, Plaintiff never requested or received her own copies of the recordings from either session. Id. ¶¶ 20-22. In short, Plaintiff's participation in the recording sessions occurred substantially within the authorized time and space limits of her position at Blizzard.

Plaintiff's assertion that she developed the baby murloc voice "on [her] own time" and through her "own creative effort," Lewis Decl. ¶¶ 12, 14, 20, does not change this outcome. The

10

Copyright Act makes clear that, while "sound recordings" may be copyrighted, the Act's protections do not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102. Because the "voice" that Plaintiff allegedly created is merely an idea -- and, thus, is not copyrightable -- it does not matter when or where she conceived of it. She has not presented any evidence to suggest that the recordings themselves were made outside of the time and space limits of her job.

### C. "Actuated, At Least In Part, By a Purpose To Serve the Employer"

At oral argument, Plaintiff conceded that she was motivated by a desire to serve Blizzard's interests when she participated in the baby murloc recording sessions. She also admitted in her declaration that, when she first agreed to work on the recordings, she understood that the recordings would be used principally to promote the game. Lewis Decl. ¶ 21. Thus, it is undisputed that her work on the recordings was "actuated, at least in part, by a purpose to serve" her employer.

In sum, Plaintiff's contributions to the baby murloc recordings satisfy all three prongs of section 228's "scope of employment" test. The recordings therefore constitute a "work made for hire" under the Copyright Act.

## II. Joint Authorship

Because the baby murloc recordings are a "work made for hire," as explained above, Blizzard is the sole copyright holder

11

in the recordings.  Accordingly, there is no need to address whether the recordings are a "joint work" under the Copyright Act.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Docket No. 39) is GRANTED.  Defendants' evidentiary objections (Docket No. 49) are DENIED as moot.

The clerk shall enter judgment and close the file.  Each party shall bear her or its own costs.

IT IS SO ORDERED.

Dated: 10/17/2013

CLAUDIA WILKEN
United States District Judge

12