MARC E. MAYER (SBN 190969); mem@msk.com
ANDREW SPITSER (SBN 255917); acs@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:   (310) 312-2000
Facsimile:    (310) 312-3100

Attorneys for Defendants
ACTIVISION BLIZZARD, INC. and
BLIZZARD ENTERTAINMENT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA LEWIS, an individual,<br><br>    Plaintiff,<br><br>   v.<br><br>ACTIVISION BLIZZARD, INC., a Delaware corporation, and BLIZZARD ENTERTAINMENT, INC., a Delaware corporation,<br><br>    Defendants. | CASE NO.  CV12-1096-CW<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS ACTIVISION BLIZZARD, INC. AND BLIZZARD ENTERTAINMENT, INC. FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:  December 5, 2013<br>Time:  2:00 p.m.<br>Judge:  Hon. Claudia Wilken<br>Dept.:  Courtroom 2, 4th Floor |

Mitchell
Silberberg &
Knupp LLP

5621492.4

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 5, 2013, at 2:00 p.m., in the Courtroom of the Honorable Claudia Wilken of the United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Courtroom 2 (4th Floor), Defendants Activision Blizzard, Inc. and Blizzard Entertainment, Inc. (collectively, "Blizzard") shall and hereby do move the Court, pursuant to California Civil Code Section 3344(a) and Section 505 of the Copyright Act, for an award of the attorneys' fees and costs incurred in the defense of this action, in the total amount of ***$171,698.09***.  This Motion is made on the following grounds:

1.      Pursuant to the mandatory fee-shifting provision of Section 3344(a), Blizzard is entitled to recover ***$13,853*** in attorneys' fees in connection with its defense of Plaintiff Amanda Lewis's ("Plaintiff") claims for violation of her right of publicity.

2.      Pursuant to Section 505 of the Copyright Act, Blizzard is entitled to recover ***$153,646.50*** in attorneys' fees in connection with its defense of Plaintiff's claim for copyright infringement.  Each of the factors articulated by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994) – (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and in the legal components of the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence – favor an award of attorneys' fees.

3.      Pursuant to Section 505 of the Copyright Act, Blizzard is entitled to ***$4,198.59*** in nontaxable costs.

This Motion is based on this Notice of Motion and Motion and attached Memorandum of Points and Authorities; the concurrently-filed Declaration of Marc E. Mayer; all papers and

Mitchell
Silberberg &
Knupp LLP

5621492.4

2

1    pleadings on file in the action; any reply papers; and any oral argument that the Court may

2    entertain at the hearing on this Motion.

3

4        Pursuant to N.D. Cal. Local Rule 54-5, counsel for the parties met and conferred for the

5    purpose of attempting to resolve any disputes with respect to this motion.  The parties were unable

6    to resolve this Motion.  Declaration of Marc Mayer, ¶ 26.

7

8    DATED: October 31, 2013              MITCHELL SILBERBERG & KNUPP LLP
                                          ANDREW SPITSER
9                                         MARC E. MAYER

10

11                                        By: /s/  Marc E. Mayer
                                              Marc E. Mayer
12                                            Attorneys for Defendants
                                              Activision Blizzard, Inc. and Blizzard
13                                            Entertainment, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ATTORNEYS' FEES AND COSTS

Mitchell
Silberberg &
Knupp LLP

5621492.4

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

I.      STATEMENT OF FACTS ..................................................................... 3

II.     AS A MATTER OF LAW, BLIZZARD IS ENTITLED TO RECOVER
        $13,853 IN FEES FOR ITS DEFENSE OF PLAINTIFF'S RIGHT OF
        PUBLICITY CLAIM. ............................................................................. 8

III.    BLIZZARD SHOULD BE AWARDED $153,646.50 IN ATTORNEYS'
        FEES FOR ITS DEFENSE OF THE COPYRIGHT CLAIM ................... 9

        A.      BLIZZARD ACHIEVED COMPLETE SUCCESS ON THE
                MERITS. ..................................................................................... 10

        B.      PLAINTIFF'S CLAIMS WERE OBJECTIVELY
                UNREASONABLE, IF NOT FRIVOLOUS. ................................. 10

        C.      PLAINTIFF'S MOTIVATION IN FILING AND PURSUING THIS
                ACTION WAS IMPROPER. ....................................................... 14

        D.      A FEE AWARD WILL ADVANCE CONSIDERATIONS OF
                COMPENSATION AND DETERRENCE. ................................... 15

IV.     BLIZZARD'S ATTORNEYS' FEES ARE REASONABLE AND
        NECESSARY ........................................................................................ 17

V.      BLIZZARD ALSO IS ENTITLED TO ITS "FULL COSTS" IN THE
        AMOUNT OF $4,198.59. ..................................................................... 20

Mitchell
Silberberg &
Knupp LLP

5621492.4

MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amadasun v. Dreamworks, LLC*,
   359 F. Supp. 2d 1367 (N.D. Ga. 2005) ........................................................................ 10, 17

*Assessment Tech. of WI, LLC v. WIREdata, Inc.*,
   361 F.3d 434 (7th Cir. 2004) ........................................................................................ 15

*Atlantic Recording Corp. v. Andersen*,
   No. CV 05-933 AC, 2008 WL 2536834 (D. Or. May 14, 2008) ................................ 20

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ........................................................................ 16

*Bernal v. Paradigm Talent & Literary Agency*,
   No. CV 07-06445 SVW, 2010 WL 6397561 ........................................................ 17, 19

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...................................................................................................... 19

*Budget Cinema, Inc. v. Watertower Associates*,
   81 F.3d 729 (7th Cir. 1996) .......................................................................................... 10

*Carano v. Vina Concha Y Toro, S.A.*,
   288 F. Supp. 2d 397 (S.D.N.Y. 2003) ........................................................................ 13

*Chivalry Film Prods. v. NBC Universal, Inc.*,
   No. 05 Civ. 5627 (GEL), 2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007) .................. 16

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ........................................................................................ 14

*Diamond Star Bldg. Corp. v. Freed*,
   30 F.3d 503 (4th Cir. 1994) .......................................................................................... 11

*Earth Flag Ltd. v. Alamo Flag Co.*,
   154 F. Supp. 2d 663 (S.D.N.Y. 2001) ........................................................................ 16

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ........................................................................................ 13

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ............................................................................................*passim*

*Garcia-Goyco v. Law Envtl. Consultants, Inc.*,
   428 F.3d 14 (1st Cir. 2005) .......................................................................................... 10

**TABLE OF AUTHORITIES**
<u>continued</u>

**Page(s)**

*Gates v. Deukmejian,*
   987 F.2d 1392 (9th Cir.1992) ................................................................ 19

*Genzmer v. Public Health Trust of Miami-Dade County,*
   219 F. Supp. 2d 1275 (S.D. Fla. 2002) .................................................. 11

*Harrison Music Corp. v. Tesfaye,*
   293 F. Supp. 2d 80 (D. D.C. 2003) ........................................................ 16

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ............................................................................... 18

*InvesSys, Inc. v. McGraw-Hill Companies, Ltd.,*
   369 F.3d 16 (1st Cir. 2004) .................................................................... 20

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
   304 F.3d 829 (9th Cir. 2002) .................................................................. 14

*JCW Invs., Inc. v. Novelty, Inc.,*
   289 F. Supp. 2d 1023 (N.D. Ill. 2003) ................................................... 13

*Kerr v. Screen Extras Guild, Inc.,*
   526 F.2d 67 (9th Cir. 1975) .................................................................... 19

*Kirby v. Sega of America, Inc.,*
   144 Cal. App. 4th 47 (2006) ................................................................. 8, 9

*Laws v. Sony Music Entertainment, Inc.,*
   448 F.3d 1134 (9th Cir. 2006) .................................................................. 5

*Levy v. Toyota Motor Sales, U.S.A., Inc.,*
   4 Cal. App. 4th 807 (1992) ...................................................................... 8

*Lil' Joe Wein Music, Inc. v. Jackson,*
   No. 06-20079-CIV, 2008 WL 2688117 (S.D. Fla. July 1, 2008) ...................... 20, 21

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.,*
   81 F.3d 881 (9th Cir. 1996) .................................................................. 9, 10

*Matthews v. Freedman,*
   157 F.3d 25 (1st Cir. 1998) .................................................................... 10

*Morales v. City of San Rafael,*
   96 F.3d 359 (9th Cir. 1996) .................................................................... 19

MOTION FOR ATTORNEYS' FEES AND COSTS

**TABLE OF AUTHORITIES**
<u>continued</u>

**Page(s)**

*Morrill v. Smashing Pumpkins*,
   157 F. Supp. 2d 1120 (C.D. Cal. 2001)................................................................. 13

*Page v. Something Weird Video*,
   960 F. Supp. 1438 (C.D. Cal. 1996)....................................................................... 8

*Peer Intern. Corp. v. Max Music & Entm't, Inc.*,
   No. 03 CIV. 0996KMWDF, 2004 WL 1542253 (S.D.N.Y. July 9, 2004) ........................... 21

*Polsby v. St. Martin's Press*,
   No. 97 Civ. 690, 2000 WL 4190793 (S.D.N.Y Jan.18, 2000) ................................. 16

*Positive Black Talk Inc. v. Cash Money Records, Inc.*,
   394 F.3d 357 (5th Cir. 2004)................................................................................. 9

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ........................................................................................... 9

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*,
   74 F.3d 488 (4th Cir. 1996)................................................................................. 21

*Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*,
   881 F. Supp. 1021, 1029 (E.D. Va. 1994) ............................................................. 21

*TAP Worldwide, LLC v. Becker*,
   2010 WL 2757354 (C.D. Cal. July 12, 2010) ....................................................... 12

*Thoroughbred Software Intern., Inc. v. Dice Corp.*,
   488 F.3d 352 (6th Cir. 2007)................................................................................. 9

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
   429 F.3d 869 (9th Cir. 2005)......................................................................... 10, 20

*Winick Corp. v. Safeco Ins. Co.*,
   187 Cal. App. 3d 1502 (1986)............................................................................... 8

*Woodhaven Homes & Realty, Inc. v. Hotz*,
   396 F.3d 822 (7th Cir. 2005)................................................................................. 9

*Yue v. Storage Tech. Corp.*,
   No. C07-05850 JW, 2008 WL 4185835 (N.D. Cal. Aug. 6, 2008)........................ 21

*Zobmondo Entm't LLC v. Falls Media LLC*,
   CV 06-3459ABCJTLX, 2009 WL 202034 (C.D. Cal. Jan. 23, 2009) .................... 17

Mitchell
Silberberg &
Knupp LLP

5621492.4

iv

# TABLE OF AUTHORITIES
## continued

Page(s)

### STATUTES

28 U.S.C. § 1920 .................................................................................................................. 20

Cal. Civ. Code,
  § 1794(d) ...................................................................................................................... 8
  § 3344 ................................................................................................................... *passim*

The Copyright Act, 17 U.S.C.,
  § 412 .............................................................................................................................. 4
  § 505 .................................................................................................................... *passim*

Fed. R. Civ. P.
  Rule 54(d)(2)(A) ......................................................................................................... 20
  Rule 68 ..................................................................................................................... 1, 5

### OTHER AUTHORITIES

1 NIMMER ON COPYRIGHT § 2.10[A][2] (2001)..................................................................... 13

Witkin, CALIFORNIA PROCEDURE, *Judgment* § 88 at 524 (3d Ed. 1985)........................................ 8

1

**<u>Introduction</u>**

2  On October 22, 2012, the Court granted the motion of Blizzard Entertainment, Inc. and

3  Activision Blizzard, Inc. (collectively, "Blizzard") to dismiss Plaintiff's right of publicity claims,

4  rendering Blizzard the prevailing party on those claims and leaving only a single claim for

5  copyright infringement.  (Docket No. 26).  On October 17, 2013, this Court granted Blizzard's

6  Motion for Summary Judgment (the "Order").  (Docket No. 52).  The October 17 Order

7  terminated this Action in its entirety, making Blizzard the prevailing party on the remainder of

8  Plaintiff's claims.  By this Motion, Blizzard seeks (1) **$13,853** in attorneys' fees pursuant to Cal.

9  Civ. Code § 3344(a), for its defense of Plaintiff's right of publicity claims, (2) **$153,646.50** in

10  attorneys' fees pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505, and (3) **$4,198.59**

11  in costs pursuant to Section 505 of the Copyright Act.  An award of attorneys' fees under Cal. Civ.

12  Code section 3344 is mandatory.  As set forth below, an award of attorneys' fees and full costs

13  under Section 505 of the Copyright Act is justified and appropriate under the four-factor test

14  articulated by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994).

15  Plaintiff was well aware from the very beginning of this lawsuit that she would be liable

16  for Blizzard's attorneys' fees and costs if Blizzard were to prevail in this lawsuit.  Plaintiff herself

17  sought attorneys' fees in her prayer for relief.  Throughout this lawsuit, Blizzard ***repeatedly***

18  reminded Plaintiff of her potential liability for fees and costs, and specifically advised her that

19  these fees likely would be hundreds of thousands of dollars.  Plaintiff not only recognized that fees

20  would be substantial, but tried to use that fact to her advantage in her efforts to obtain a windfall

21  settlement.  Moreover, Blizzard offered Plaintiff multiple opportunities to voluntarily abandon her

22  claims, even ***after*** the Court granted Blizzard's initial Motion to Dismiss the right of publicity

23  claims, which entitled Blizzard to attorneys' fees as a matter of law.  In fact, in an effort to

24  minimize the unnecessary expenditure of fees, at the outset of this case Blizzard made a Rule 68

25  Offer of Judgment, in an amount many times the actual value of Plaintiff's services.  Plaintiff

26  rejected all of these offers and opportunities, and instead pursued her case through summary

27  judgment.  That reckless and deliberate decision ultimately cost Blizzard more than $170,000 in

Mitchell
Silberberg &
Knupp LLP

5621492.4

28

MOTION FOR ATTORNEYS' FEES AND COSTS

1  legal fees and costs. The interests of fairness and deterrence require that Plaintiff now compensate

2  Blizzard for those fees and costs.

3      This is precisely the type of case in which an award of attorneys' fees is justified, and,

4  indeed, necessary in the interests of compensation and deterrence. As a threshold matter,

5  California law is absolutely clear that a prevailing defendant is entitled to recover all of its fees

6  incurred in connection with claims for violation of one's right of publicity. Cal. Civ. Code §

7  3344(a) ("The prevailing party in any action under this section *shall* also be entitled to attorney's

8  fees and costs.") (emphasis added.) As for Plaintiff's copyright claims, each of the *Fogerty* factors

9  that guide the Court's analysis easily are met here. Aside from the fact that Blizzard achieved

10 complete success on the merits, the Court's summary judgment ruling makes clear that Plaintiff's

11 claims were objectively unreasonable, including because Plaintiff admitted every relevant fact,

12 and was unable to offer even a single case denying work-for-hire status to a work created in

13 circumstances even remotely analogous to those here. Plaintiff's own communications in the

14 course of this lawsuit also confirm that her intention in filing this lawsuit was not to seek just

15 appropriate compensation for any injury, but instead to extort a windfall settlement from Blizzard

16 without any basis in law or fact. Finally, an award of fees plainly would serve interests of

17 compensation and deterrence, since Plaintiff knew the risk of proceeding with her claims and she

18 knew that litigation would cost Blizzard tens or hundreds of thousands of dollars. In fact, Plaintiff

19 herself admitted that she intended to force Blizzard to spend "more than $1 million on its

20 defense." Without an award of fees Blizzard will be left uncompensated, and Plaintiff will suffer

21 no penalty for her unjustified and meritless lawsuit.

22      As set forth below, the fees and costs requested by Blizzard are reasonable, fair, and

23 justified by the law and the facts. The case was staffed almost exclusively by only two attorneys,

24 the only work done was that which was absolutely necessary to the litigation, and Blizzard was

25 billed at rates that are commensurate with those charged in this jurisdiction and in this industry.

26 Accordingly, the Court should award Blizzard its requested attorneys' fees and costs.

27

28

Mitchell
Silberberg &
Knupp LLP

5621492.4

## I.      STATEMENT OF FACTS.

**Background of the Case.**  A detailed recitation of the background facts of this case are set forth in the Court's October 17, 2013, Order.  (Docket No. 52).  Blizzard is a video game publisher and developer, and is the creator and owner of the video game "World of Warcraft" ("WoW").  Order at 1.  This case arose from work performed by Plaintiff in connection with a WoW creature known as the "baby murloc."  During the time she performed this work, Plaintiff was employed at Blizzard as a "Game Master" ("GM") for WoW.  *Id.*  As Plaintiff admitted (and as the Court noted), according to the "Game Master Job Description" in Blizzard's training manual:

> Game Masters are customer service specialists with expert knowledge of the game *who are [] present as characters within World of Warcraft's epic fantasy setting* to provide assistance and guidance to players while also coordinating world functionality. In this capacity, GM's serve as the direct link between Blizzard and its customers. Additionally, GM's are responsible for in-game customer support, helping manage our online community, and *assisting with the creation of content during the ever ongoing development of the game.*

Order at 2 (emphasis added).

There was no dispute that: (i) Plaintiff's job description (*i.e.*, "assisting with the creation of content") was intended and understood by Blizzard to include creative work such as voice-over work; (ii) among their other responsibilities, GMs regularly are assigned to work with Blizzard's content creation or development teams; and (iii) GMs assist with all manner of WoW-related tasks (including creative tasks) when instructed or offered the opportunity to do so.  Order at 8.

In July 2005 (two months after her employment commenced), Plaintiff was invited to participate in "open auditions" for voice work in the game.  *Id.* at 2.  Plaintiff (along with 120 of her colleagues) participated in the audition and, as a result of that audition, was later invited to record a voice for a newly created character, the baby murloc – a "cuter, smaller version of the original murloc," a mythical creature already featured in the game.  *Id.* at 2.  At Blizzard's direction and instruction, Plaintiff participated in two recording sessions at Blizzard's recording studio and was paid for her time.  *Id.* at 3.  As a result of those recording sessions, Blizzard created a short set of vocal recordings (the "Baby Murloc Recordings"), which it subsequently

1    incorporated into baby murloc characters in WoW.  Not one second of the Baby Murloc

2    Recordings was created on Plaintiff's own time, on her own equipment, or at her home.

3        **The Lawsuit.**  Though Plaintiff was fully aware of Blizzard's use of the vocal recording

4    (and admits that she discovered baby murlocs "in the wild" in 2006, before her employment was

5    terminated), she did and said nothing for the following five years.  Then, on November 9, 2010,

6    Blizzard received a letter from Plaintiff's counsel, alleging that Blizzard had violated Plaintiff's

7    copyright and right of publicity by using the Baby Murloc Recordings in WoW.  Declaration of

8    Marc Mayer ("Mayer Decl."), ¶ 15 & Ex. 5.  Plaintiff demanded that Blizzard pay Plaintiff to

9    settle the dispute and, if the matter was not resolved by December 10, 2010, "I have been

10    instructed to file the necessary legal pleadings."  *Id.*.  In response to Plaintiff's letter, Blizzard

11    provided Plaintiff's counsel with a copy of her entire employment file.  *Id.*, ¶ 15.  Additionally, on

12    April 18, 2011, Blizzard advised Plaintiff that the claims were without merit, because Plaintiff was

13    a Blizzard employee, was paid by Blizzard, did her work at Blizzard's facilities, performed her

14    work at the direction of Blizzard, and performed a voice that was a derivative of Blizzard's well-

15    known murloc voice.  *Id.*, ¶ 14 & Ex. 6.

16        Plaintiff did not respond to Blizzard's April 18, 2011, communication.  Instead, on March

17    7, 2012 – ***nearly one year later*** – Plaintiff filed her Complaint in this Action.  The Complaint

18    asserted claims for copyright infringement, "voice misappropriation" (violation of her right of

19    publicity), and quantum meruit, all based on Blizzard's alleged unauthorized use of the Baby

20    Murloc Recordings.  *Id.*, ¶ 16.  The Complaint sought "[t]hat the Court award plaintiff costs of suit

21    incurred herein, including attorneys' fees, as provided by the Copyright Act and California law."

22    Complaint, Prayer For Relief, ¶ 4.  (In fact, Plaintiff was not entitled to attorneys' fees under the

23    Copyright Act because her purported copyright had not been timely registered, 17 U.S.C. § 412).

24        **Plaintiff's Initial Settlement Efforts And The Motion to Dismiss.**  Promptly after the

25    lawsuit was filed, Blizzard reiterated its position that Plaintiff's claims were meritless, but also

26    advised Plaintiff that for the purposes of resolving the action it would be willing to entertain a

27    settlement proposal that was commensurate with the value of Plaintiff's services and the amount

28    that Blizzard pays to other voice actors.  Mayer Decl., ¶ 17.  Plaintiff did not respond to that

1  request for more than a month.  Finally, on April 23, 2012, Plaintiff's counsel sent a letter to

2  Blizzard's counsel demanding a payment of $1.2 million.  *Id.*, ¶ 17, Ex. 7 .

3      On April 26, 2012, Blizzard filed its Motion to Dismiss Plaintiff's state law claims –

4  namely, her claims for "voice misappropriation" and quantum meruit.  The Motion asserted that

5  Plaintiff's state law claims were preempted by the Copyright Act under *Laws v. Sony Music*

6  *Entertainment, Inc.*, 448 F.3d 1134 (9th Cir. 2006).  (Docket No. 14).

7      On May 3, 2012, while the Motion to Dismiss was pending, Blizzard sent a written

8  response to Plaintiff's April 23 letter, requesting that Plaintiff reconsider her settlement position

9  and advising Plaintiff's counsel that "if you are prepared to make a realistic demand that reflects

10 the fair market value of your client's services, we are open to further discussion. In this regard, you

11 should be aware that Blizzard typically pays no more than $400 for non-union voice-work."

12 Mayer Decl., ¶ 18 & Ex. 8.  The April 23 letter also advised Plaintiff that if she did not prevail in

13 the action, Blizzard would be entitled to seek to recover its attorneys' fees.  *Id.*  On May 9, 2012,

14 Blizzard made a Rule 68 Offer of Judgment in the amount of $15,000 (many times the fair market

15 value of the work performed).  Plaintiff did not respond to that offer, and it expired.  Mayer Decl.,

16 ¶ 19 & Ex. 9.[1]

17     On October 22, 2012, the Court granted Blizzard's Motion to Dismiss and dismissed the

18 right of publicity and "quantum meruit" claims, holding that they were preempted by the

19 Copyright Act.  (Docket No. 26).  On November 14, 2012, Plaintiff filed her Amended Complaint,

20 asserting a single claim for copyright infringement.  (Docket No. 27).

21     **The Parties' Discovery and Blizzard's Second Settlement Proposal.**  The Parties

22 exchanged written discovery in late 2012 and early 2013.  Blizzard then produced all of its

23 documents pertaining to the creation of the baby murloc character and the voice-over sessions,

24 including the recording sessions themselves.  Mayer Decl., ¶ 22.  Blizzard also produced dozens of

25 voice-over agreements with independent contractors so that Plaintiff could evaluate the true value

26

27 [1]  On September 4, 2012, the parties participated in a court-ordered mediation in San Francisco,
but were unable to resolve the dispute.  Mayer Decl., ¶ 20.

28

Mitchell
Silberberg &
Knupp LLP

5621492.4

1  of her claim.  *Id.*  Plaintiff did not produce any documents pertaining to her creation of the Baby

2  Murloc Recordings (presumably because no such documents existed), and did not produce any

3  evidence that she created any aspect of the Baby Murloc Recordings (including the "voice" or

4  "song") outside the recording sessions.  *Id.*  However, Plaintiff **did** produce a copy of her training

5  manual, which includes the Game Master job description quoted above.  *Id.*

6         On June 25, 2013, Blizzard took Plaintiff's deposition.  Mayer Decl., ¶ 23.  In the

7  deposition, Plaintiff admitted all of the facts that proved that her work was "for hire" and within

8  the scope of her employment, including that, among other facts: (1) she knew that her job

9  description included "assisting with the creation of content;" (2) she knew that others in her

10  position had performed creative work and when she took the job she "hoped" that she might have

11  that opportunity; (3) she performed at the recording sessions at the direction of, and at the time,

12  place, and manner directed by Blizzard; (4) she did not pay for or commission any of the recording

13  equipment; (5) the voice she used in the recording session (and in the audition) was adapted from

14  and based on Blizzard's original murloc voice; (6) she was aware no later than 2006 that the Baby

15  Murloc Recordings had been used to voice baby murloc characters in WoW, but elected not to

16  pursue claims or even advise Blizzard of her objections; (7) when Plaintiff left the recording

17  studio in 2005 she did not understand or believe that she owned any of the recordings made during

18  those sessions; and (8) she was paid for her time, did not demand additional compensation, and

19  instead accepted the payment she received without complaint.

20         Following the deposition, Blizzard made one final attempt to resolve the action.  In a letter

21  dated June 27, 2013, Blizzard advised Plaintiff that her claims were without merit, that Blizzard

22  already was entitled to recover its attorneys' fees in connection with the right of publicity claims,

23  and that if Blizzard were to prevail on the copyright claims those claims also were subject to a fee-

24  shifting provision.  Nevertheless, in an attempt to avoid further expense, Blizzard offered to waive

25  its demand for fees if Plaintiff would dismiss her claim.  Mayer Decl., ¶ 23 & Ex. 10.  Later that

26  evening, Plaintiff's counsel responded to the settlement letter in an email, stating that "it is getting

27  clear to me that you and your client really do not understand this case" and "you better start

28  preparing your motion for summary judgment."  *Id.*, Ex. 11.

Mitchell
Silberberg &
Knupp LLP

5621492.4

MOTION FOR ATTORNEYS' FEES AND COSTS

On June 26, 2013, Plaintiff took the deposition of two Blizzard employees that were involved in the 2005 auditions and/or the vocal recording sessions.  Mayer Decl., ¶ 24.  That same day, Plaintiff's counsel demanded an immediate discovery conference and then threatened to file a motion to compel on a host of overbroad demands, including demands that Blizzard search its entire computer system for every reference to the word "murloc" and provide documents reflecting its overall profits (including from subscription fees) from 2005 to the present.  *Id.* Plaintiff also filed a frivolous discovery motion for an order requiring Blizzard to (retroactively) verify an interrogatory response that Blizzard had discovered to be incorrect and, therefore, had corrected in a set of amended responses (which were verified).  *Id.*, ¶ 25 (Docket No. 36).  The Magistrate Judge denied the motion to compel. (Docket No. 38).  These unnecessary and wasteful discovery tasks required Blizzard to incur several thousand dollars in attorneys' fees.

**The Summary Judgment Motion and Order.**  On July 16, 2013, the parties stipulated to summary judgment briefing on the limited issues of work-for-hire and joint authorship.  (Docket No. 34).  The parties briefed these two issues in August and September 2013, and the Court held a hearing on the motion on October 10, 2013.  (Though Plaintiff had forced Blizzard to incur more than $100,000 in attorneys' fees as of that date, Plaintiff's counsel did not personally appear at the summary judgment hearing, instead opting to appear by phone).

On October 17, 2013, the Court issued its Order granting the Motion for Summary Judgment.  In its Order, the Court held that "the undisputed facts demonstrate that Plaintiff was an employee of Blizzard and that her contributions to the baby murloc recordings fell squarely within the scope of her employment."  Specifically, the Court noted – as Blizzard had clearly advised Plaintiff before making its Motion – that the work performed by Plaintiff fell well within her job description because "the training manual Plaintiff received specifically identified content-creation as one of her official responsibilities. Even if she only performed this responsibility on occasion, it was still expressly listed in her job description and therefore fell within the scope of her stated duties."  The Court also noted that "producing content is very similar to the other duties that game masters were routinely expected to perform," (including because they "engaged directly with game content"); that there was no dispute that game masters "sometimes produced original content

1    for the game," and that "Plaintiff's ***own description*** of her experience recording the baby murloc

2    voice suggests that this work fell within the scope of her ordinary job duties." Order at 7-8.

3    (emphasis added.) Thus, "taken together, this evidence indicates that both Plaintiff and her co-

4    workers understood that her contributions to the baby murloc recordings constituted the kind of

5    work she was 'employed to perform.'" *Id*. Because the work-for-hire issue was dispositive, the

6    Court did not reach Blizzard's alternative ground for summary judgment, that the Baby Murloc

7    Recordings were works of joint authorship.

8        **This Motion**. On October 21, 2013, Blizzard advised Plaintiff of its intention to file this

9    Motion, and requested that Plaintiff make an offer to settle this fee dispute. Plaintiff refused to

10    make any monetary offer and offered only to waive an appeal. Mayer Decl., ¶ 26.

11

12    **II.      AS A MATTER OF LAW, BLIZZARD IS ENTITLED TO RECOVER $13,853 IN**

13          **FEES FOR ITS DEFENSE OF PLAINTIFF'S RIGHT OF PUBLICITY CLAIM.**

14        Cal. Civ. Code section 3344(a) provides: "The prevailing party in any action under this

15    section ***shall*** also be entitled to attorney's fees and costs." (Emphasis added). The language of the

16    statue is clear: an award of fees is ***mandatory*** to the prevailing party. *Kirby v. Sega of America,*

17    *Inc.*, 144 Cal. App. 4th 47, 62 (2006) ("The mandatory fee provision of section 3344, subdivision

18    (a) leaves no room for ambiguity. Whether the course is sound is not for us to say. This is the

19    course the Legislature has chosen and, until that body changes course, we must enforce the rule.")

20    *See also Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 813 (1992) (analogous

21    language regarding attorneys' fees in Civil Code Section 1794(d) – that a prevailing party "shall

22    be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of

23    costs and expenses, including attorney's fees" – "is mandatory").

24        Blizzard plainly is the "prevailing party" on the right of publicity claims. *See Page v.*

25    *Something Weird Video*, 960 F. Supp. 1438, 1446 (C.D. Cal. 1996) ("the defendant prevails when

26    the plaintiff recovers nothing") *quoting* Witkin, CALIFORNIA PROCEDURE, *Judgment* § 88 at 524

27    (3d Ed. 1985). *See also Winick Corp. v. Safeco Ins. Co.*, 187 Cal. App. 3d 1502, 1508 (1986)

28    (dismissal with prejudice at an early stage of the litigation rendered defendant the prevailing

1   party).  Accordingly, as a matter of law, Blizzard is entitled to its fees and costs incurred in

2   connection with the Motion to Dismiss.[2]  Blizzard incurred *$13,853* in attorneys' fees in

3   connection with its Motion to Dismiss the right of publicity claims and in connection with work

4   directly related to the Motion to Dismiss.  These fees were reasonable, appropriate, and

5   necessarily incurred.  Mayer Decl., ¶¶ 8-12 & Exs. 1, 2.

6

7   **III.   BLIZZARD SHOULD BE AWARDED $153,646.50 IN ATTORNEYS' FEES FOR**

8   **        ITS DEFENSE OF THE COPYRIGHT CLAIM.**

9           After the right of publicity and *quantum meruit* claims were dismissed, the only claim that

10  remained in the action was Plaintiff's claim for copyright infringement, arising from Blizzard's

11  alleged unauthorized exploitation of the Baby Murloc Recordings.  *See* First Amended Complaint,

12  *passim*.  Accordingly, all remaining fees and costs incurred in the Action were to defend the

13  copyright infringement claims.

14          Section 505 of the Copyright Act provides that, in civil copyright actions, the Court may

15  "award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.[3]

16  Upon the Court's entry of judgment in favor of Blizzard, it was the prevailing party.  *See Maljack*

17  *Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).  While "[t]here is

18  no precise rule or formula" for determining whether the court, in its discretion, should award

19  attorney's fees to a prevailing party, courts in this Circuit consider the following nonexclusive

20  ─────────────────────

21  2  Though the Motion to Dismiss also addressed state law claims for *quantum meruit*, those claims
    were entirely derivative of the right of publicity claims and thus no apportionment of these fees is
22  required.  *Kirby*, 144 Cal. App. 4th at 62 n.7 (affirming the lower court's finding that "all of
    Kirby's state statutory and common law claims [were] inexorably intertwined" and refusal to
23  "further apportion the fee award.").

24  3  Several Circuits have held that, in accord with *Fogerty*, awards of fees are "the rule rather than
    the exception and [they] should be awarded routinely."  *Positive Black Talk Inc. v. Cash Money*
25  *Records, Inc.*, 394 F.3d 357, 381 (5th Cir. 2004) *abrogated on other grounds by Reed Elsevier,*
    *Inc. v. Muchnick*, 559 U.S. 154 (2010) (internal citations omitted); *see, e.g.*, *Thoroughbred*
26  *Software Intern., Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007).  This is particularly true
    when the prevailing party is the defendant.  *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d
27  822, 824 (7th Cir. 2005) ("When the prevailing party is the defendant … the presumption in favor
    of awarding fees is very strong.  For without the prospect of such an award, the party might be
28  forced into a nuisance settlement or deterred all together from exercising his rights.")

factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and in the legal components of the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883 (9th Cir. 2005). All of these factors weigh in favor of awarding Blizzard its attorneys' fees in defending this Action.

### A.       Blizzard Achieved Complete Success on the Merits.

The Court resolved the entirety of Plaintiff's copyright claim in Blizzard's favor. Thus, Blizzard achieved complete and total success in this action. *See Maljack Prods.*, 81 F.3d at 890 (award of attorneys' fees proper where defendant, for which summary judgment was granted, "obtained total success in defending against [plaintiff's] copyright claims"); *Amadasun v. Dreamworks, LLC*, 359 F. Supp. 2d 1367, 1375 (N.D. Ga. 2005) (where "Court granted summary judgment in favor of defendants as to plaintiff's copyright infringement, federal trademark, and state law claims …. defendants are clearly the prevailing parties on all claims.").

### B.       Plaintiff's Claims Were Objectively Unreasonable, If Not Frivolous.

Unreasonableness is an objective standard, and thus a plaintiff's ignorance of the facts or the law before filing does not negate objective unreasonableness. *See Maljack*, 81 F.3d at 889; *Budget Cinema, Inc. v. Watertower Associates*, 81 F.3d 729, 732-33 (7th Cir. 1996) (awarding attorneys' fees where plaintiff knew or should have known that it lacked ownership of the copyright upon which it sued). Additionally, the Court need not find that Plaintiff's claims were frivolous in order to award attorneys' fees. *See Fogerty*, 510 U.S. at 527, 532 n.18 (rejecting argument that attorneys' fees award to a defendant "represents a penalty imposed upon the plaintiff for institution of a baseless, frivolous, or unreasonable suit, or one instituted in bad faith"). Indeed, unreasonableness is not even a prerequisite to a fee award. *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 21 (1st Cir. 2005) (fee award appropriate even without express finding of frivolity); *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998) ("Depending on other circumstances, a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable.").

The Court's findings on summary judgment confirm that this case was objectively unreasonable, and indeed, was patently frivolous. *See, e.g., Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) ("[W]hen a party has pursued a patently frivolous position, the failure of a district court to award attorneys' fees and costs to the prevailing party will, except under the most unusual circumstances, constitute an abuse of discretion."). Plaintiff's claims were not supported either by the facts or the law, and she should have recognized this before filing and pursuing her action through summary judgment.

Prior to filing this lawsuit, Plaintiff certainly knew (or should have known) all of the relevant facts. She knew that she was an employee when she assisted in making the Baby Murloc Recordings. She knew this type of work might be included in her employment (in fact, when she took the job with Blizzard she "hoped" that she would be given the opportunity for creative work). She knew that others in her position had done creative work for Blizzard, and that 120 of her colleagues also had auditioned for the chance to voice WoW characters. Perhaps most critically, Plaintiff ***admitted*** that she read her job description during her first week of work, and thus ***knew*** that it included "assisting with the creation of content" among the tasks she had been employed to perform. It is difficult to conceive of more dispositive evidence of work-for-hire status. *Genzmer v. Public Health Trust of Miami-Dade County*, 219 F. Supp. 2d 1275, 1281 (S.D. Fla. 2002) (job description could be interpreted to include the work and the work at issue had been done by others, "at times"). It was perhaps for this reason that Plaintiff waited for more than a year after contacting Blizzard before filing her lawsuit.

In addition to the foregoing, Plaintiff understood that when she participated in the vocal recordings she was doing so as a Blizzard employee and as part of her job. She willingly accepted direction from Blizzard as to the nature of her work (including the timing of the project), willingly accepted her hourly wages for the work she did, used her Blizzard email to schedule and coordinate the work, entered the auditions (with 120 of her colleagues) hoping that she would be given the chance to participate in voice-over work for her employer, and performed a voice that she knew was derived from a preexisting WoW character and thus not original to her. In the meantime, she never once held herself out as the owner of the Baby Murloc Recordings, never

1    discussed ownership issues when she came to the recording studio, never asked for or possessed a

2    copy of the Recordings, never demanded licensing fees, never asked to be part of the editing

3    process, and never demanded that she be given approval rights over the use of the Recordings. All

4    of the other relevant facts also were undisputed, such as that the work was done at Blizzard's

5    premises and on Blizzard's equipment, was for the sole purpose of benefiting Blizzard, and was

6    mentioned as part of her performance reviews. Finally, there was no dispute that, despite her

7    knowledge that "her" purported copyrights had been violated in 2006, Plaintiff did ***nothing*** to

8    vindicate her purported copyrights, and did not even raise the issue with her employer. Even ***after***

9    she hired counsel in 2010, Plaintiff continued to do nothing for well over a year, a delay that she

10    never attempted to explain. These are hardly the actions of one who believed that she owned

11    copyrights that had been unlawfully exploited.

12         In light of all of the undisputed factual and evidentiary record, Plaintiff and her counsel

13    also certainly knew or should have known that they had no ***legal*** basis for Plaintiff's claims.

14    Though she had years to conduct legal research and analyze the claims, Plaintiff never identified a

15    single legal decision that supported her claim. Instead, throughout this lawsuit, and in her

16    summary judgment motion, Plaintiff based her entire case on only a single unreported district

17    court decision – *TAP Worldwide, LLC v. Becker*, 2010 WL 2757354, at *4 (C.D. Cal. July 12,

18    2010). But even the most casual reading of that case should have led Plaintiff to conclude that she

19    could not prevail on her claims. *TAP* was so different from this case that it actually supported the

20    work-for-hire conclusion. For example, as the Court noted, in *TAP* (1) the employee's job

21    description did not include the task at issue, (2) the employee had not received any praise or

22    guidance from the employer – in fact, "Plaintiff's management staff was unaware of the existence

23    of the software until the termination of Defendants' employment," and (3) the employer was not in

24    the business of producing computer software (and thus there was no reason to expect that the

25    employee would have anything to do with computer programming). Order at 10; *TAP*, at *4.

26    Meanwhile, Plaintiff ignored all of the cases that supported Blizzard's work-for-hire claim, even

27    though they had been brought to her attention during the course of the lawsuit.

28

Mitchell
Silberberg &
Knupp LLP

5621492.4

MOTION FOR ATTORNEYS' FEES AND COSTS

1    While the Court resolved the case on the work-for-hire issue, and thus did not need to

2    address any other issues, Blizzard's other defenses were equally dispositive, and any of them

3    would have justified dismissal of the copyright claims.  For example:

4    ●    **Joint Authorship.**  As set forth in Blizzard's Motion for Summary Judgment, the

5    Baby Murloc Recordings (and any "song" contained therein) were, at minimum, works of joint

6    authorship, created both by Plaintiff and Blizzard.  In fact, Blizzard was responsible for every

7    creative and technical decision in connection with the Baby Murloc Recordings, including

8    selecting the equipment, directing the vocal work, and editing the raw recording into a useable

9    piece of voice work.  The law is absolutely clear that the type of work performed by Blizzard

10   constitutes "authorship."  *JCW Invs., Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1032 (N.D. Ill.

11   2003) ("Wirt set up the session and directed MacLean to use different types of voices in the

12   recording studio.  From these different recordings, Wirt personally selected which of these voice

13   recordings would ultimately be used for [the work]."); *Morrill v. Smashing Pumpkins*, 157 F.

14   Supp. 2d 1120, 1123 (C.D. Cal. 2001) ("Morrill's filming and editing … satisf[ies] the requisite

15   level of copyrightable expression necessary to support a claim of joint authorship."); 1 NIMMER ON

16   COPYRIGHT § 2.10[A][2] (2001) ("capturing and electronically processing the sounds, and

17   compiling and editing them to make the final sound recording" constitutes authorship).

18   ●    **Oral / Implied License.**  Lewis also could not succeed on her copyright claims

19   because she gave Blizzard an oral or implied license for the use.  *See Effects Assocs., Inc. v.*

20   *Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990).  Lewis permitted Blizzard to record her voice (in

21   fact, she **volunteered** for the opportunity) and then permitted Blizzard to keep the recording,

22   **knowing** that it would be used to voice the baby murloc.  Then, for the next **seven** years, Plaintiff

23   never once complained about or objected to the use, even though she knew that the Recording had

24   been incorporated into the baby murloc character.  This is the paradigmatic example of an implied

25   license.  *See Carano v. Vina Concha Y Toro, S.A.*, 288 F. Supp. 2d 397, 401-02 (S.D.N.Y. 2003)

26   (implied license where the plaintiff provided its creation to the defendant, knew that its creation

27   would be later used by the defendant, and never placed the distributor on notice of its claim).

1      • **Laches.** There was no dispute that Plaintiff knew that the Baby Murloc Recording

2   had been used other than to voice the "Murky" character at Blizzcon 2005. Plaintiff specifically

3   knew – in *2006* – that baby murlocs had been added to the WoW expansion "The Burning

4   Crusade" in 2006. Nevertheless, she did nothing for the next six years. *See Danjaq LLC v. Sony*

5   *Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Because her delay was well in excess of the three-year

6   limitations period applicable to copyright claims, laches is *presumed*. *Jarrow Formulas, Inc. v.*

7   *Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Blizzard suffered both evidentiary and

8   expectations-based prejudice, since it continued to use the Baby Murloc Recordings in WoW (and

9   in WoW pets) until this lawsuit and witness memories have faded.

10      Blizzard repeatedly articulated all of these defenses to Plaintiff, along with both

11   evidentiary and legal citations to support its position. Blizzard also repeatedly advised Plaintiff of

12   its intention to seek attorneys' fees under Section 505 if it were to prevail in this action. *See*

13   Mayer Decl., Exs. 8 & 10. Plaintiff nevertheless pursued her claim all the way through summary

14   judgment, thereby forcing Blizzard to incur significant attorneys' fees and costs. Ultimately,

15   summary judgment was granted in Blizzard's favor, and Blizzard thus was wholly justified

16   vigorously defending the claims.

17      ## C.   <u>Plaintiff's Motivation in Filing and Pursuing This Action Was Improper.</u>

18      Plaintiff made no secret of her strategy in filing this case. As she said in her April 23,

19   2012 letter:

20      > What is important for Blizzard to recognize is that it would not be
        > inconsistent with the evidence for a jury to find that Ms. Lewis's
21      > work contributes 1% or more to WoW's profits, which would entail
        > damages of over $10 million. We recognize that your team will
22      > actively work to prevent [a judgment against Blizzard]. In doing so,
        > ***Blizzard will likely be required to spend more than $1 million on***
23      > ***its defense.*** See http://www.patentinsurance.com/iprisk `/aipla-
        > survey/ ($932K cost to litigate copyright case through trial).
24      > Additionally, Blizzard may find that litigation of this matter
        > constitutes poor public relations.
25
   Mayer Decl., ¶ 17, Ex. 7 (emphasis added).
26

27      As confirmed by the pre-litigation and settlement correspondence, Plaintiff's goal was to

28   extract an unjustified settlement from Blizzard by forcing it to incur substantial legal fees and by

1  threatening Blizzard with the prospect that its *overall* revenue from subscription fees would be

2  presented to a jury (which then might be swayed by those numbers to award some portion of that

3  amount to Plaintiff). For that reason, Plaintiff never *once* attempted to justify her multi-million

4  dollar settlement demands with any reference to the actual value of her services or the reasonable

5  value of a license for the Baby Murloc Recording. Moreover, Plaintiff clung to her outrageous

6  demands even after Blizzard produced dozens of voice-over agreements reflecting that the actual

7  value of her work was a few hundred dollars – not the millions of dollars she demanded in

8  settlement. Moreover, Plaintiff never offered any evidence to support her claims that *any* of the

9  subscription fees were attributable to the use of the Baby Murloc Recordings. Thus, Plaintiff

10  clearly brought this case *not* to seek redress for any injury she actually suffered, but instead to

11  obtain an unjustified windfall against a large video game company.

12       **D.    A Fee Award Will Advance Considerations of Compensation And Deterrence.**

13       Plaintiff's decision to file this lawsuit knowing that her claims were not supported, and to

14  pursue it in the face of all of the evidence that was disclosed in discovery, was reckless, at best.

15  At worst, it was a misguided attempt to force a nuisance settlement. Either way, Plaintiff's

16  decision to file and pursue this lawsuit was in complete disregard for the substantial expense that

17  Plaintiff knew Blizzard would incur (and intentionally forced Blizzard to incur) in defending

18  against these frivolous and unreasonable claims.[4]

19       Interests of fairness and equity demand that Blizzard be compensated for the attorneys'

20  fees incurred in defending this lawsuit. *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d

21  434, 437 (7th Cir. 2004) (award of attorneys' fees is necessary to compensate a defendant for

22  being forced to defend a "marginal" suit, because "[u]nless a party in that situation has a prospect

23  of obtaining attorneys' fees, it will be under pressure to throw in the towel if the cost is less than

24

25  [4] While forcing Blizzard to incur a substantial amount of fees litigating the case, Plaintiff

26  apparently did only the minimum amount of work necessary to keep the case active. Most notably, though Plaintiff had forced Blizzard to spend dozens of hours briefing its motion for summary judgment, her counsel could not even spare an afternoon or the expense of a short flight

27  to personally appear in Court for the summary judgment hearing. That decision exemplified Plaintiff's lackadaisical attitude and lack of confidence in her case.

28

1    the anticipated attorneys' fees."); *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 85 (D.

2    D.C. 2003) ("The Copyright Act seeks to stimulate artistic creativity for the general public good

3    and discourage infringement.  Awarding attorney's fees addresses these goals because it enables

4    people to vindicate or defend their rights where it would otherwise be uneconomical to do so.")

5    (internal citations omitted).  Without any financial consequences, there is nothing to discourage

6    Plaintiff or others from filing similar lawsuits in the future.  *See Earth Flag Ltd. v. Alamo Flag*

7    *Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001) ("This case presented a straightforward copyright

8    infringement claim that was objectively unreasonable. … Failing to award attorneys' fees to

9    defendants in such situations would invite others to bring similarly unreasonable actions without

10   fear of consequences.").

11        An award of attorneys' fees is particularly justified here, because Plaintiff was given

12   several opportunities to abandon her case.  She was informed by Blizzard, both at the outset of the

13   lawsuit and prior to the summary judgment briefing, that her claims were meritless and that her

14   settlement demands were not supported by the facts.  Blizzard also advised her many times that

15   she could be liable for Blizzard's attorneys' fees if it prevailed.  Plaintiff thus was well aware of

16   the risk of proceeding, but elected to do so anyway.  Moreover, Blizzard offered Plaintiff a very

17   reasonable settlement proposal at the beginning of the case.  Had she accepted that proposal, she

18   could have saved Blizzard tens of thousands of dollars.  In the absence of an award of attorneys'

19   fees, Plaintiff will suffer no consequences – and Blizzard will have been penalized – as a result of

20   Plaintiff's reckless decision to reject any reasonable settlement and instead pursue her

21   unreasonable lawsuit.  Such a result is inequitable and would encourage frivolous litigation.  *See*

22   *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627 (GEL), 2007 WL 4190793, at * 3

23   (S.D.N.Y. Jan. 18, 2000) (S.D.N.Y. Nov. 27, 2007) *(quoting Polsby v. St. Martin's Press*, No. 97

24   Civ. 690,, 2000 WL 4190793, at *3 ("although the plaintiff in this case did not engage in a

25   'campaign of vexatious litigation,' the need for deterrence against objectively unreasonable

26   copyright claims is significant")); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359-60

27   (S.D.N.Y. 2006) (attorneys' fees should be awarded to deter plaintiffs "from bringing

28   unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score

1  big if they win and that there will be no adverse consequences if they lose"); *Amadasun*, 359 F.

2  Supp. 2d at 1376 ("potential plaintiffs must be deterred from bringing frivolous and baseless

3  suits").

4         Finally, a fee award will further the interests of the Copyright Act, and "[t]he Ninth Circuit

5  has held that faithfulness to the purposes of the Copyright Act is … the pivotal criterion." *Bernal*

6  *v. Paradigm Talent & Literary Agency*, No. CV 07-06445 SVW (PLAx), 2010 WL 6397561, at *2

7  (internal citations omitted).  This is not a case where there was a questionable or difficult issue

8  going to the merits of a copyright claim.  Rather, this was a meritless case that Plaintiff filed

9  without legal support, and which she pursued in the face of evidence demonstrating that she had

10  no claim.  At best, Plaintiff pursued this case without any careful thought or analysis of its true

11  value, both in the amount that the claims were worth and its likelihood of success.  Blizzard

12  certainly was entitled to pursue a defense to such a claim and in so doing to refuse to pay Plaintiff

13  the extortionate settlement she demanded.  *Amadasun*, 359 F. Supp. 2d at 1376, *quoting Fogerty*,

14  510 U.S. at 527 ("a prevailing defendant's successful defense against a copyright claim aids in

15  establishing the boundaries of infringement and furthers the purpose of 'enriching the general

16  public through access to creative works'").  *See also Zobmondo Entm't LLC v. Falls Media LLC*,

17  CV 06-3459ABCJTLX, 2009 WL 202034, at *3 (C.D. Cal. Jan. 23, 2009) ("[B]aseless claims …

18  are inimical to the purposes of the Copyright Act.  These types of claims, and fear of specious

19  lawsuits, can chill creative expression resulting in the diminution of creative works.  An award of

20  attorney's fees would serve as a deterrent for such claims.").

21

22  **IV.   BLIZZARD'S ATTORNEYS' FEES ARE REASONABLE AND NECESSARY.**

23         Plaintiff filed this action in March 2012.  Over the approximately 18 months that the case

24  was pending, Plaintiff forced Blizzard to incur more than $171,000 in attorneys' fees.  Plaintiff

25  cannot dispute that these fees were reasonable given her own claim that "Blizzard will likely be

26  required to spend more than $1 million on its defense."  Thus, she intended to force Blizzard to

27  incur many hundreds of thousands of dollars in fees.

28

1    During the 18 months that the case was litigated, Blizzard's counsel performed a

2  substantial number of tasks, including:

3    • reviewing and analyzing Plaintiff's Complaint;

4    • preparing and filing the motion to dismiss;

5    • analyzing and researching the facts of the case and Blizzard's defenses to Plaintiff's

6        infringement claims;

7    • preparing for and attending the Court-ordered mediation;

8    • answering Plaintiff's Amended Complaint;

9    • serving written discovery on Plaintiff, and responding to Plaintiff's written

10        discovery;

11    • reviewing documents produced by Plaintiffs and collected by Blizzard;

12    • consulting with and interviewing potential damages experts;

13    • preparing for and taking Plaintiff's deposition;

14    • preparing for and attending Plaintiff's deposition of Brian Farr and Mickey

15        Neilson;

16    • opposing Plaintiff's frivolous motion to compel verifications of superseded

17        discovery responses;

18    • conducting discovery conferences concerning Plaintiff's demand for production of

19        excessive profits documents and overbroad "murloc" documents;

20    • preparing Blizzard's motion for summary judgment and reply in support thereof;

21        and

22    • preparing for and attending the hearing on Blizzard's motion for summary

23        judgment.

24  *See* Mayer Decl. Ex. 1.  As set forth in the invoices attached hereto, Blizzard's time was spent

25  exclusively on the relevant and necessary tasks.

26    The Copyright Act provides that the prevailing party may recover a "reasonable attorney's

27  fee."  A reasonable attorney's fee is determined based on the "lodestar" calculation of "number of

28  hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v.*

Mitchell
Silberberg &
Knupp LLP

5621492.4

1  *Eckerhart*, 461 U.S. 424, 433 (1983) (civil rights action).  The lodestar figure is presumptively

2  reasonable, but may be adjusted based on the factors outlined in *Kerr v. Screen Extras Guild, Inc.*,

3  526 F.2d 67, 70 (9th Cir. 1975),[5] to the extent these factors are not already subsumed by the

4  lodestar calculation.[6]  *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) *amended*

5  *on other grounds*, 108 F.3d 981 (9th Cir. 1997) (civil rights case).

6      Courts determine the reasonableness of the rate for attorneys' fees based on the rates for

7  similar services by attorneys of similar experience in the relevant community.  *Blum v. Stenson*,

8  465 U.S. 886, 895 (1984) (civil rights action).  "The relevant community includes 'attorneys

9  practicing in the forum district' – that is, the district in which the court sits."  *Bernal*, 2010 WL

10  6397561, at *6, *quoting Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992).  The rates

11  charged by Blizzard's counsel are extremely reasonable, particularly given the expertise and

12  overall experience of the attorneys involved.

13      Finally, Blizzard's defense strategy and time incurred was reasonable.  During the course

14  of this litigation, Blizzard was represented almost exclusively by one partner and one associate,

15  both of whom have expertise in intellectual property litigation and the video game industry.

16  Blizzard avoided duplication of tasks and performed only those tasks that were necessary to the

17  litigation.  Additionally, Blizzard's work was focused on the core issues (i.e. work for hire and

18  joint authorship) and because of its decision to move for an early summary judgment, it was able

19  to avoid nearly all of the (very large) expenses that would have been involved in its damages

20  defense.  To confirm these facts, Blizzard has submitted herewith a summary of the work done,

---

21  5 The twelve *Kerr* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the
22  questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion
   of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6)
23  whether the fee is fixed or contingent, (7) time limitations imposed by the client or the
   circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,
24  and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the
   professional relationship with the client, and (12) awards in similar cases."  *Kerr v. Screen Extras*
25  *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

26  6 The *Kerr* factors subsumed by the lodestar include: "(1) the novelty and complexity of the
   issues, (2) the special skill and experience of counsel, (3) the quality of representation, ... (4) the
27  results obtained, ... and (5) the contingent nature of the fee agreement" *Morales v. City of San
   Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996) *amended on other grounds*, 108 F.3d 981 (9th Cir.
   1997) (civil rights case) (internal citations and quotation marks omitted).

28

1    the rates charged, as well as evidence of the experience of Blizzard's counsel, including familiarity

2    with Blizzard's business and with the video game business in general.

3    **V.     BLIZZARD ALSO IS ENTITLED TO ITS "FULL COSTS" IN THE AMOUNT OF**

4          **$4,198.59.**

5          As the prevailing party, Blizzard may recover its reasonable costs ("taxable" and "non-

6    taxable") in defending the action.  17 U.S.C. § 505 ("In any civil action under this title, the court

7    in its discretion may allow the recovery of *full costs* by or against any party other than the United

8    States or an officer thereof.") (emphasis added); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for

9    attorneys' fees and related non-taxable expenses must be made by motion….").

10         Blizzard has submitted to the clerk a cost bill reflecting the amount of "taxable" costs

11   pursuant to 28 U.S.C. § 1920 (approximately $1800).  Additionally, this Court may award "***non-***

12   ***taxable***" costs under the Copyright Act.  *See Twentieth Century Fox Film Corp.*, 429 F.3d at 885

13   ("we hold that district courts may award otherwise non-taxable costs, including those that lie

14   outside the scope of § 1920, under § 505.").  "Defendants should be awarded, as part of their

15   attorney's fees award, their litigation costs which include reasonable out-of-pocket expenses

16   incurred by the attorney and which are normally charged to fee-paying clients, so long as these

17   costs are incidental and necessary to the litigation."  *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-

18   20079-CIV, 2008 WL 2688117, at *14 (S.D. Fla. July 1, 2008).  Blizzard incurred at least

19   **$4,198.59** in costs in connection with online legal research expenses; telecopier and copying

20   expenses; and messenger, courier, and overnight mail expenses in connection with this action.

21   Mayer Decl., Ex. 4.  Because such expenses normally are billed to a private client, were billed

22   here to Blizzard, are reasonable in amount, and were necessary to the litigation, they are

23   recoverable as "non-taxable" expenses.

24         Other courts have awarded these and similar types of expenses in copyright infringement

25   cases.  *See e.g.*, *InveSys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F.3d 16, 23 (1st Cir. 2004)

26   (upholding award of "computer-assisted research costs" (*i.e.* Westlaw and LexisNexis): "we see

27   no reason why such costs – if paid to third-party providers – should not be recovered under section

28   505."); *Atlantic Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834 (D. Or.

1   May 14, 2008) (awarding Westlaw charges to prevailing copyright defendant:  "In this circuit,

2   charges for computer-assisted legal research are recoverable as costs if they are ordinarily billed to

3   clients separately."); *Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F.

4   Supp. 1021, 1029 (E.D. Va. 1994) *aff'd sub nom. Superior Form Builders, Inc. v. Dan Chase*

5   *Taxidermy Supply Co., Inc.*, 74 F.3d 488 (4th Cir. 1996) (approving award of litigation expenses

6   including, among other things, "federal express [and] photocopying"); *Lil' Joe Wein Music*, 2008

7   WL 2688117, at *14 (awarding "process fees, photocopying, facsimiles, long distance telephone

8   charges, federal express charges, computer research charges, court charges and travel expenses");

9   *Yue v. Storage Tech. Corp.*, No. C07-05850 JW, 2008 WL 4185835 (N.D. Cal. Aug. 6, 2008)

10  (awarding non-taxable costs "including legal research and courier fees"); *Peer Intern. Corp. v.*

11  *Max Music & Entm't, Inc.*, No. 03 CIV. 0996KMWDF, 2004 WL 1542253 (S.D.N.Y. July 9,

12  2004) (awarding messenger expenses).  There is no reason why these costs should not also be

13  awarded here.

14

15                                      **<u>Conclusion</u>**

16          For the foregoing reasons, the Court should award Blizzard (1) **$13,853** in attorneys' fees

17  in connection with the right of publicity claims; (2) **$153,646.50** in attorneys' fees in connection

18  with the copyright claims; and (3) **$4,198.59** in nontaxable costs.

19

20  DATED: October 31, 2013                    MITCHELL SILBERBERG & KNUPP LLP

21

22                                   By: /s/  Marc E. Mayer
                                        Attorneys for Defendants
23                                       Activision Blizzard, Inc. and Blizzard
                                        Entertainment, Inc.

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

5621492.4