1  MARC E. MAYER (SBN 190969); mem@msk.com
   ANDREW SPITSER (SBN 255917); acs@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
3  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  Attorneys for Defendants
   ACTIVISION BLIZZARD, INC. and
6  BLIZZARD ENTERTAINMENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA LEWIS, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>ACTIVISION BLIZZARD, INC., a Delaware corporation, and BLIZZARD ENTERTAINMENT, INC., a Delaware corporation,<br><br>    Defendants. | Case No. CV12-1096-CW<br><br>**BLIZZARD'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS**<br><br>Date: December 5, 2013<br>Time: 2:00 p.m.<br>Judge: The Honorable Claudia Wilken<br>Dept.: Courtroom 2 – 4th Floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

I.  BLIZZARD SHOULD BE AWARDED ITS ATTORNEYS' FEES
    UNDER CAL. CIV. CODE § 3344 ............................................................................ 2

II. BLIZZARD SHOULD BE AWARDED ITS ATTORNEYS' FEES
    UNDER SECTION 505 OF THE COPYRIGHT ACT ............................................. 5

    A.  PLAINTIFFS' FINANCIAL CONDITION SHOULD NOT
        PRECLUDE A FEE AWARD. ....................................................................... 5

    B.  THE *FOGERTY* FACTORS SUPPORT AN AWARD OF FEES ................ 7

III. THE COURT SHOULD AWARD BLIZZARD ITS NONTAXABLE
     COSTS ...................................................................................................................... 11

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Assessment Tech. of WI, LLC v. WIREdata, Inc.*,
　361 F.3d 434 (7th Cir. 2004) .................................................................................................. 9

*Bravado Int'l Group Merch. Servs. v. Cha*,
　Case No. CV 09-9066 PSG, 2011 U.S. Dist. LEXIS 20021 (C.D. Cal. Feb. 11, 2011) ........... 4

*Brayton Purcell LLP v. Recordon & Recordon*,
　487 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................................................................. 6

*Butler v. Target Corp.*,
　323 F. Supp. 2d 1052 (C.D. Cal. 2004) ................................................................................. 4

*Chivalry Film Prods. v. NBC Universal, Inc.*,
　05 Civ. 5627 (GEL), 2007 U.S. Dist. LEXIS 86889 (S.D.N.Y. Nov. 27, 2007) ................. 5, 6

*Fantasy, Inc. v. Fogerty*,
　94 F.3d 553 (9th Cir. 1996) ............................................................................................ 5, 6, 7

*Fogerty v. Fantasy, Inc.*,
　510 U.S. 517 (1994) ............................................................................................................... 7

*Garcia-Goyco v. Law Envtl. Consultants, Inc.*,
　428 F.3d 14 (1st Cir. 2005) .................................................................................................... 7

*Hubbard v. Sobreck, LLC*,
　554 F.3d 742 (9th Cir. 2009) .............................................................................................. 3, 4

*Invessys, Inc. v. McGraw-Hill Cos., Ltd.*,
　369 F.3d 16 (1st Cir. 2004) .................................................................................................... 9

*Kesey, LLC v. Francis*,
　Case No.: 06-CV-540-AC, 2010 U.S. Dist. LEXIS 111911 (D. Or. July 26, 2010) ............... 6

*Kirby v. Sega of America, Inc.*,
　144 Cal. App. 4th 47 (2006) .................................................................................................. 2

*Laws v. Sony Music Entertainment*, *Inc.*
　Case No. CV 03-2038 LGB, Docket No. 72 (C.D. Cal. 2006) .............................................. 3

*Laws v. Sony Music Entertainment, Inc.*,
　448 F.3d 1134 (9th Cir. 2006) ............................................................................................ 3, 4

*Lieb v. Topstone Indus.*,
　788 F.2d 151 (3d Cir. 1986) ................................................................................................... 5

Mitchell Silberberg & Knupp LLP

5680009.3

*Lil' Joe Wein Music, Inc. v. Jackson*,
  No. 06-20079-CIV, 2008 U.S. Dist. LEXIS 112730 (S.D. Fla. July 1, 2008) ...................... 11

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
  81 F.3d 881 (9th Cir. 1996) .................................................................................................. 4

*Mallery v. NBC Universal, Inc.*,
  07 Civ. 2250 (DLC), 2008 U.S. Dist. LEXIS 20893 (S.D.N.Y. Mar. 18, 2008) ...................... 6

*Matthews v. Freedman*,
  157 F.3d 25 (1st Cir. 1998) ................................................................................................... 7

*OP Art, Inc. v. B.I.G. Wholesalers, Inc.*,
  No. 3:03-CV-0887-P, 2006 U.S. Dist. LEXIS 10641 (N.D. Tex. 2006) ................................. 9

*Page v. Something Weird Video*,
  960 F. Supp. 1438 (C.D. Cal. 1996) ...................................................................................... 2

*Providence Health Plan v. McDowell*,
  385 F.3d 1168 (9th Cir. 2004) ............................................................................................... 3

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010). ............................................................................................................. 5

*Scott-Blanton v. Universal City Studios Prods. LLLP*,
  593 F. Supp. 2d 171 (D. D.C. 2009) ............................................................................. 5, 6, 8

*Screenlife Establishment v. Tower Video, Inc.*,
  868 F. Supp. 47 (S.D.N.Y. 1994) ........................................................................................ 10

*Williams v. Crichton*,
  No. 93 Civ. 6829, 1995 U.S. Dist. LEXIS 10699 (S.D.N.Y. Aug. 1, 1995) ............................ 6

*Williams v. Curington*,
  662 F. Supp. 2d 33 (D. D.C. 2009) ....................................................................................... 4

*Wilson v. Tony M. Sanchez & Co.*,
  No. 07-0822, 2009 U.S. Dist. LEXIS 37518 (E.D. Cal. 2009) .............................................. 3

*Woodhaven Homes & Realty, Inc. v. Hotz*,
  396 F.3d 822 (7th Cir. 2005) ................................................................................................. 5

*Zobmondo Entm't LLC v. Falls Media LLC*,
  CV 06-3459ABCJTLX, 2009 U.S. Dist. LEXIS 9306 (C.D. Cal. Jan. 23, 2009) ................ 10

Mitchell
Silberberg &
Knupp LLP

5680009.3

iii
REPLY MEMO IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

**STATUTES**

Americans with Disabilities Act .................................................................................... 2, 3, 4

Cal. Civ. Code,
 § 3344 ........................................................................................................... 1, 2, 3, 4

California's Disabled Person's Act ....................................................................................... 3, 4

Copyright Act ............................................................................................................. 1, 2, 4, 10
 § 412 ..................................................................................................................... 10
 § 505 ...................................................................................................................... 4, 6

**OTHER AUTHORITIES**

5 Nimmer On Copyright § 14.10[D][2][b] (2013) ............................................................ 10

Fed. R. Civ. P.,
 54(d)(2)(A) ........................................................................................................... 11
 68 .............................................................................................................................. 1

**Introduction**

Plaintiff's Memorandum in Opposition to Blizzard's Motion for Attorneys' Fees ignores the most critical fact that justifies the requested award: If attorneys' fees are not awarded, then Plaintiff will suffer no consequence – and Blizzard will be wholly uncompensated – for the more than $150,000 that Plaintiff forced Blizzard to spend litigating this case, notwithstanding that Blizzard offered to settle this case on multiple occasions (and in fact offered entry of judgment in the amount of ***$15,000*** early in the case) well before most of these fees were incurred.[1] In the meantime, Plaintiff concedes that Blizzard obtained complete victory on the merits of the case, that the fees and costs it requests are fair and reasonable, and that all of the relevant facts were known to her at the outset of the case. Accordingly, only an award of Blizzard's attorneys' fees and costs would further the interests of compensation and deterrence and the policies and purposes of the Copyright Act.

Plaintiff's Opposition is almost completely premised on her assertion that, because Plaintiff is a student with limited means and Blizzard is a large company with "essentially infinite resources" (Opp. at 12), she was entitled to pursue meritless claims against Blizzard (and thus force it to spend in excess of $150,000 defending those claims) without ***any*** consequence. But the size and financial resources of the ***defendant*** are not among the considerations in assessing whether fees should be awarded. Nor should the Court premise its decision on the relative financial condition of the parties. Such a rule would send a message to would-be plaintiffs that litigation is a "free shot" because only the defendant bears the burden, risk, and expense of its defense. Thus, attorneys' fees routinely are awarded against individual plaintiffs, and there is no tangible or admissible evidence here that Plaintiff is "impecunious."

The few remaining arguments made by Plaintiff in her Opposition also are without merit. Most notable of these is the novel and unsupported claim that, because Blizzard obtained dismissal of Plaintiff's right of publicity claim on preemption grounds, it may not seek attorneys' fees under California's right of publicity statute (Cal. Civ. Code § 3344). But no case ever has so held, and,

---

[1] Plaintiff asserts that Blizzard offered only $1,000 to settle the case. That is not correct. Blizzard served on Plaintiff a Rule 68 Offer of Judgment in the amount of $15,000.

to the contrary, courts award attorneys' fees under Section 3344 after dismissal on preemption grounds.  The cases cited by Plaintiff (involving an actual conflict between the fee-shifting provisions of the Americans with Disabilities Act and its California equivalent) are not on point, and had nothing to do with the recovery of fees after a dismissal on preemption grounds.  Rather, these were cases involving an *actual conflict* between two fee-shifting provisions as applied to the *same* conduct.  As for Plaintiff's claim that she litigated in "good faith," that claim is belied by her unreasonable settlement demands, her threats to Blizzard that she would force it to incur $1 million in attorneys' fees, and her continued insistence that she would recover a portion of Blizzard's gross revenue.  Finally, this motion is not brought "malevolently" or to "enrich" Blizzard; the purpose is to obtain some compensation from Plaintiff for the expense incurred by Blizzard, in defending against Plaintiff's claim, and to deter other plaintiffs from pursuing claims with an eye toward obtaining windfall settlements against Blizzard without fully assessing the value of the claim and the actual damage incurred.

For the reasons set forth in Blizzard's Motion and as set forth below, Blizzard should be awarded its attorneys' fees and nontaxable costs in its successful defense of this action.

## I. BLIZZARD SHOULD BE AWARDED ITS ATTORNEYS' FEES UNDER CAL. CIV. CODE § 3344

There is no dispute that an award of attorneys' fees under Cal. Civ. Code § 3344(a) is *mandatory* to the prevailing party.  *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47, 62 (2006).  There also is no dispute that Blizzard was the "prevailing party" on the right of publicity claims.  *See Page v. Something Weird Video*, 960 F. Supp. 1438, 1446 (C.D. Cal. 1996) ("[T]he defendant prevails when the plaintiff recovers nothing.")  Finally, there is no dispute that the amount sought by Blizzard is fair and reasonable, and the fees incurred were necessary to its defense.  Accordingly, Blizzard should be awarded all of its attorneys' fees incurred in defending against the right of publicity claims.

Plaintiff's only argument against an award of (mandatory) attorneys' fees under Section 3344 is her novel theory that because Blizzard won dismissal on preemption grounds, the

*fee-shifting* provision of Section 3344 also is "necessarily" preempted by the Copyright Act. (Opp. at 14). Plaintiff does not cite a single case in support of this theory, and no case ever has so held. Plaintiff's right of publicity claim was a different claim than her claim for copyright infringement, brought under a different statute. When Blizzard obtained dismissal of the publicity claim as a matter of law, that was a judgment on the merits that rendered Blizzard the prevailing party on the claim. *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1174 (9th Cir. 2004) ("[A] finding of preemption is a final judgment on the merits."). Notably, both the District Court and Ninth Circuit in *Laws* (on which this Court's decision largely was based) awarded attorneys' fees pursuant to Cal. Civ. Code § 3344 after the underlying right of publicity claim was found to be preempted. *See Laws v. Sony Music Entertainment*, Case No. CV 03-2038 LGB, Docket No. 72 (C.D. Cal. 2006); *Laws v. Sony Music Entertainment*, No. 03-57102, Docket No. 42 (9th Cir. 2006).

The cases cited by Plaintiff – involving the relationship between the federal Americans with Disabilities Act ("ADA") and California's Disabled Person's Act ("CDPA") – are not on point. These cases, including *Hubbard v. Sobreck, LLC*, 554 F.3d 742 (9th Cir. 2009), had nothing to do with the situation here, in which the underlying state law statutory claim was dismissed on preemption grounds and fees were then sought pursuant to the underlying statute. Instead, *Hubbard* involved a very specific issue of conflict preemption: namely, two different fee-shifting standards (a state law and federal law standard) were applied to parallel and identical claims – one under the federal law and one under state law – that were based on the same facts and legal theories. What *Hubbard* and its progeny held was that where a defendant prevails on ***both*** the ADA and CDPA claims on the same grounds, it would present an actual ***conflict*** with federal law and federal policy for different attorney' fees standards to be applied. It was the ***fee-shifting*** provisions that were in conflict and therefore preempted, not the underlying ***claim***. *See Hubbard v. Sobreck, LLC*, 554 F.3d 742, 745 (9th Cir. 2009) ("To the extent that California's Section 55 mandates the imposition of fees on a losing plaintiff who brought both a nonfrivolous ADA action and a parallel action under Section 55, an award of attorneys' fees under Section 55 would be inconsistent with the ADA, which would bar imposition of fees on the plaintiff."); *Wilson v. Tony*

3
REPLY MEMO IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Mitchell Silberberg & Knupp LLP

5680009.3

*M. Sanchez & Co.*, No. 07-0822, 2009 U.S. Dist. LEXIS 37518, *5-6 (E.D. Cal. 2009) ("[A] grant of fees under the California cause of action would necessarily be a grant of fees as to the ADA claims.... [T]his court finds that it would be improper to authorize the award of fees to Defendants on its nonfrivolous CDPA state claims that parallel its nonfrivolous ADA claims.")

Unlike *Hubbard*, this case involved two separate claims filed under different statutes and that involved different purported "rights" (*i.e.* copyrights and rights of publicity). Unlike the ADA and CDPA claims at issue in *Hubbard*, Plaintiff's two claims here were not litigated together and success on the right of publicity claim did not automatically result in success on the copyright claim. A grant of fees under the California cause of action would ***not*** "necessarily be a grant of fees" as to the federal claims. *Wilson* at *5. Thus, the mandatory fee-shifting provision of Cal. Civ. Code §3344 is not in conflict with the discretionary fee-shifting provision of Section 505 of the Copyright Act, and its application would not violate the policies and purposes of the Copyright Act. If *Hubbard* applied here, and a conflict were found to exist between the fee-shifting provision of Section 3344 and Section 505 of the Copyright Act, then courts would never be able to award fees under both Civ. Code 3344 and the Copyright Act. That obviously is not the law, and in fact courts issue fee awards under ***both*** statutes to prevailing parties.[2] *See*, *e.g.*, *Bravado Int'l Group Merch. Servs. v. Cha*, Case No. CV 09-9066 PSG, 2011 U.S. Dist. LEXIS 20021, 16 (C.D. Cal. Feb. 11, 2011) ("Plaintiff is entitled to attorney's fees as a prevailing party under both California Civil Code § 3344.1(a)(1) and 17 U.S.C. § 505.").

---

[2] Blizzard's preemption arguments were not "technical" or "complex" (Opp. at 10). The law is absolutely clear – and has been for many years – that right of publicity claims arising entirely from the use of a "voice" incorporated in a copyrighted sound recording are preempted by the Copyright Act. *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134 (9th Cir. 2006) ("[W]e think ***it is clear*** that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium….") (emphasis added). *See also Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1056 (C.D. Cal. 2004) ("Plaintiffs have not alleged that the Commercials used impersonations of their voices, but the Recording itself[.]"); *Williams v. Curington*, 662 F. Supp. 2d 33, 40 (D. D.C. 2009) (the "subject matter of [plaintiff's] right of publicity claims – the sound recording of 'Last Night Changed It All' – is the same as that of her alleged copyright").

## II. BLIZZARD SHOULD BE AWARDED ITS ATTORNEYS' FEES UNDER SECTION 505 OF THE COPYRIGHT ACT

Plaintiff concedes that, upon Court's entry of judgment in its favor, Blizzard was the prevailing party in this action. *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996). Plaintiff also does not dispute that Blizzard achieved complete and total success in this action (Opp. at 10) and that the amount of fees sought by Blizzard is reasonable and appropriate. Thus, in opposition to Blizzard's request, Plaintiff focuses almost entirely on the financial disparity between the parties, claiming that she lacks the wherewithal to *satisfy* any fee award, while hyperbolically characterizing Blizzard as a "corporate behemoth" (Opp. at 9, 12) and a "multi-billion dollar corporation" with "phalanxes of attorneys" (Opp. at 5). These arguments, as well as the few other arguments she asserts concerning the four *Fogerty* factors, do not justify departure from the common and proper practice of awarding attorneys' fees to a prevailing defendant in copyright cases. *See*, *e.g.*, *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) ("When the prevailing party is the defendant … the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred all together from exercising his rights.").

### A. Plaintiffs' Financial Condition Should Not Preclude A Fee Award.

The relative financial condition of the parties (and Plaintiff's status as an individual plaintiff) is *not* one of the factors enumerated in *Fogerty*.[3] In fact, it is not unusual for courts to award attorneys' fees against individual plaintiffs, including *pro se* plaintiffs, even where the defendant is a corporation and the plaintiff is of limited means. *See, e.g., Chivalry Film Prods. v. NBC Universal, Inc.*, 05 Civ. 5627 (GEL), 2007 U.S. Dist. LEXIS 86889, *11 (S.D.N.Y. Nov. 27, 2007); *Scott-Blanton v. Universal City Studios Prods. LLLP*, 593 F. Supp. 2d 171, 173 (D. D.C. 2009) (awarding fees "even after affording greater leniency for a *pro se* litigant"). Plaintiff's

---

[3] Notably, the *Fogerty* court's four factors were derived from the Third Circuit's decision *in Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir. 1986). Although *Lieb* listed the "relative financial strength of the parties" as a "valid consideration" in determining the *amount* of any award (but not a party's entitlement to an award in the first instance), the Supreme Court apparently disagreed, and thus did not discuss this "factor" at all.

reading of the law – namely, that no fees can or should be awarded when the plaintiff is an individual and the defendant is a large corporation – would effectively nullify the fee-shifting provision of Section 505. Such a rule would enable individuals to file all manner of copyright actions with complete impunity and without any regard for the expenses that they have forced the defendant to incur. The argument is especially troubling here, because Plaintiff specifically sought to capitalize on Blizzard's size and profitability in order to obtain an unjustified windfall settlement, and she advised Blizzard at the outset that she was prepared to force it to spend in excess of $1 million litigating the case if Blizzard would not accede to her settlement demands. Moreover, Blizzard is not seeking to recover a massive or unsupportable amount of fees. Its demand (of approximately $150,000) is reasonable and appropriate (particularly for a case that included multiple dispositive motions, depositions, written discovery, and a discovery motion).

As for Plaintiff's claim that she is "impecunious," that claim is not supported by any tangible evidence, such as bank account statements, tax returns, or paychecks. *Mallery v. NBC Universal, Inc.*, 07 Civ. 2250 (DLC), 2008 U.S. Dist. LEXIS 20893, at *2 (S.D.N.Y. Mar. 18, 2008) (discounting the plaintiffs' argument that the award should be reduced due to financial hardship because they failed to offer documentary support); *Scott-Blanton*, 593 F. Supp. 2d at 176 n. 1 ("The plaintiff also states that she is of 'modest financial means.' Although the court is mindful that 'the aims of the [Copyright Act] are compensation and deterrence where appropriate, but not ruination,' … the court has no basis on which to determine the plaintiff's financial footing. Therefore, this factor does not affect the court's analysis.") (citations omitted). This single unsupported claim certainly should not trump every other one of the *Fogerty* factors.[4] At most, to the extent that the Court is inclined to consider Plaintiff's financial condition in deciding this motion, it should do so only in crafting the ***amount*** of the award, not in determining Defendants'

---

[4] While the Ninth Circuit, on remand in *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) noted as one factor the "chilling effect" on an "impecunious plaintiff," this was only one of several factors. Additionally, *Fogerty* did ***not*** cite the relative financial condition of the parties as a factor – only whether the plaintiff was "impecunious." The other cases cited by Plaintiff – *Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124, 1129 (N.D. Cal. 2007), and *Kesey, LLC v. Francis*, Case No.: 06-CV-540-AC, 2010 U.S. Dist. LEXIS 111911 (D. Or. July 26, 2010) – noted the existence of this factor but did not engage in further discussion as to its meaning or importance.

Mitchell Silberberg & Knupp LLP

5680009.3

entitlement to such an award. *Chivalry Film*, 2007 U.S. Dist. LEXIS 86889, at *11. *Williams v. Crichton*, Case No. 93 Civ. 6829, 1995 U.S. Dist. LEXIS 10699, *1 (S.D.N.Y. Aug. 1, 1995) (relative financial strength only relevant to determining "the amount of an award"). And, to the extent that Plaintiff asserts that her decision to file and pursue this case was based upon advice she was given by counsel or the fact that counsel had invested time and effort into the case (such as "well over a hundred hours of attorney work on factual and legal research, letters, and other communications with Blizzard," Opp. at 5-6), she has the ability to separately seek relief or contribution from her counsel.

### B. The *Fogerty* Factors Support an Award of Fees

Aside from her discussion of her financial condition, Plaintiff makes a few arguments addressed to each of the *Fogerty* factors. The arguments ignore key facts or misconstrue the law.

**1. Objective Unreasonableness.** Plaintiff's claim that fees may only be awarded where the claims are "frivolous" is wrong. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 532 n.18 (1994) (rejecting argument that attorneys' fees award to a defendant "represents a penalty imposed upon the plaintiff for institution of a baseless, frivolous, or unreasonable suit, or one instituted in bad faith"); *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 21 (1st Cir. 2005) (fee award appropriate even without express finding of frivolity). In fact, "[d]epending on other circumstances, a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable." *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998).

In any event, this case did not present a "close question." Plaintiff never adduced ***any*** relevant authority for her "work-for-hire" theory, failing to cite a single case that involved facts even close to those at issue here. In the meantime, she never even addressed on summary judgment any of the cases that supported Blizzard's work-for-hire claim. Moreover, Plaintiff knew all of the relevant facts well before she filed her lawsuit, including that she hoped and expected to do creative work, that she was one of many GMs that auditioned for voice-over work, that all of her work was at Blizzard's direction and expense, that for many years she never purported to exercise ownership over her purported copyright, and, of course, that her job description included the precise work that she performed for the Baby Murloc Recordings. Had

Mitchell Silberberg & Knupp LLP

5680009.3

1 she done the proper analysis, she (or her attorneys) should have realized that she could not prevail

2 on her claims or, at minimum, that she had a serious risk of losing the case and that Blizzard's

3 initial settlement offers were reasonable (in fact, they were generous) and should have been

4 carefully considered.

5     Nor was Blizzard's defense based upon new evidence or new legal theories. Blizzard

6 explained to Plaintiff the basis for its work-for-hire defense many months (in fact, more than a

7 year) prior to the lawsuit (Mayer Decl., Ex. 6, p. 78) and then again immediately after the lawsuit

8 was filed (*Id.*, Ex. 8, p. 89). In that correspondence, Blizzard made clear that it was not relying on

9 its standard "Inventions Agreement" (though all employees sign such an agreement, Plaintiff

10 almost certainly did as well, and that additionally would have justified a work-for-hire finding), [5]

11 but instead on the common law work-for-hire and agency standards. The same was true with

12 respect to Blizzard's other defenses, including its joint authorship defense, which was fully

13 articulated as early as May 3, 2012. Mayer Decl., Ex. 8, p. 89.

14     Finally, Plaintiff ignores or misremembers that *she* produced – and thus had in her

15 possession at all times – the training manual that clarified the scope of her job. Even if she had

16 not *initially* realized that the training manual contained the job description at issue, once she

17 authenticated the training manual at her deposition and understood its impact, she should have

18 abandoned her claim when Blizzard gave her that opportunity in June 2013. (Mayer Decl., Ex. 10,

19 p. 95) (requesting dismissal based on "Ms. Lewis's admissions that (1) her formal written job

20 description included 'assisting with the creation of content' (59:18-61:9 & Ex. 7)") *See Scott-*

21 *Blanton*, 593 F. Supp. 2d at 171 ("[T]he defendants not only notified the plaintiff that the short

22 story was created prior to the plaintiff's work but warned her that if she continued to pursue her

23 claims, she may be responsible for the defendants' attorneys' fees.") Plaintiff's argument that

---

[5] Plaintiff claims that Blizzard "falsely represented" that Plaintiff signed its standard "Inventions Agreement." Opp. at 4. That is not true. Blizzard has always maintained (and would have presented evidence at trial) that such an Agreement was signed, including because the agreement was part of the packet of documentation given to all employees on their first day and Plaintiff admittedly signed other documents that were in that packet. Blizzard also has confirmed that other employees that started work the same week signed the Agreement. It is only because of the lengthy passage of time between Plaintiff's employment and this lawsuit (more than 7 years) that Blizzard has not been able to locate a copy of Plaintiff's signed Inventions Agreement.

once she filed the lawsuit she was entitled to pursue it (irrespective of its merit) is wrong. *See Invessys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 21 (1st Cir. 2004) (fees awarded where "at first blush it might appear as if the plaintiffs had a colorable claim" but after further factual development, the plaintiffs' claim became "more dubious."); *OP Art, Inc. v. B.I.G. Wholesalers, Inc.*, CIVIL ACTION NO. 3:03-CV-0887-P, 2006 U.S. Dist. LEXIS 10641, *6 (N.D. Tex. 2006) ("Even if Plaintiffs had a good faith belief at one time [in the merits of their claims], that time long since passed.")  If that were the law, then plaintiffs would be rewarded for following a "file-first/think-later" strategy.

**2. Motivation.**  Plaintiff downplays her motivation for filing and pursuing this case, arguing that she "was not attempting to bully Blizzard," but merely "sought to invoke her right to obtain redress" (Opp. at 12).  The argument misses the point.  What Plaintiff does not, and cannot, dispute is that she never merely sought "redress" for any injury.  Instead, she sought a multi-million dollar windfall settlement, and never once demanded anything less than $1.2 million.  She then sought to justify this demand by arguing that Blizzard's defense costs would exceed her demand and stating that Plaintiff would seek to put Blizzard's overall revenue numbers before the jury as the sole basis for her damages assessment.  *See* Mayer Decl., Ex. 7, p. 87.  By contrast, Blizzard provided Plaintiff with hundreds of voice-over agreements so that she could review those agreements and assess the value of her services as compared to others engaged in similar work.  If Plaintiff had merely reviewed those documents and made a settlement proposal that bore some relationship to the "injury" she claimed to have suffered, then litigation almost certainly could have been avoided or curtailed.

**3. Compensation and Deterrence.**  An award of attorneys' fees in this case would not "enrich" Blizzard.  Nor is it intended to be punitive or "malevolent" (Opp. at 2).  Blizzard seeks an award of fees only as (partial) compensation for the expense of litigating this case. *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) (award of attorneys' fees is necessary to compensate a defendant for being forced to defend a "marginal" suit, because "[u]nless a party in that situation has a prospect of obtaining attorneys' fees, it will be under pressure to throw in the towel if the cost is less than the anticipated attorneys' fees").

Mitchell Silberberg & Knupp LLP

5680009.3

More importantly, denial of fees would send a message to other would-be plaintiffs that copyright litigation against Blizzard is a "free shot," since any downside from litigating (namely, exposure for attorneys' fees) can be avoided merely by making unsupported claims of poverty. *Zobmondo Entm't LLC v. Falls Media LLC*, CV 06-3459ABCJTLX, 2009 U.S. Dist. LEXIS 9306, at *9 (C.D. Cal. Jan. 23, 2009) ("[F]ear of specious lawsuits, can chill creative expression resulting in the diminution of creative works. An award of attorney's fees would serve as a deterrent for such claims.").

**4. Purposes of the Copyright Act.** Plaintiff does not address the final (most important) factor – the purposes and policies of the Copyright Act – except to note that an award of attorneys' fees would not be "evenhanded" because (though she *sought* fees in her Complaint) she did not register her copyright and thus could not obtain an award of fees against Blizzard. Plaintiff does not cite any authority for the proposition that a defendant may not obtain an award of attorneys' fees when the copyright has not been timely registered. The rule proposed by Plaintiff would make little sense, and would unfairly penalize defendants, since a defendant cannot control whether a plaintiff's copyright is timely registered, while it is the plaintiff who makes the decision to file and proceed with litigation. Thus, even Professor Nimmer, in the same treatise section cited by Plaintiff, notes that Section 412 of the Copyright Act (preventing recovery of fees without a timely registration) "has not been applied to bar a defendant from collecting its fees by defeating an infringement claim brought by the proprietor of a not-timely-registered work."[6] 5 Nimmer on Copyright § 14.10[D][2][b] (2013), *citing Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47 (S.D.N.Y. 1994), as an example of a case where plaintiff was denied recovery of statutory damages based on an untimely registration, but defendant was awarded attorneys' fees as the "prevailing party."

---

[6] The portion of Professor Nimmer's treatise (5 Nimmer On Copyright § 14.10[D][2][b] (2013)) quoted by Plaintiff is not a rule of law, nor does it even suggest a rule of law; it is merely an observation that the Supreme Court's rule of "evenhandedness" is not as strict a rule as it might seem.

### III. THE COURT SHOULD AWARD BLIZZARD ITS NONTAXABLE COSTS

Since Blizzard did not file (and could not have filed) this Motion until after the Court's October 18 Order, it would be incongruous for the Court to have pre-determined that Blizzard was not entitled to recover "non-taxable" costs and expenses, which must be sought by motion. Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorneys' fees and related non-taxable expenses must be made by motion…."). Accordingly, the final line of the October 18 Order should not fairly be read to preclude Blizzard from seeking such nontaxable costs. Assuming that is the case, review of the evidence reflects that all of the costs sought by Blizzard are fair, reasonable, of the type normally incurred in such a case, and – most importantly – were *actually* incurred by Blizzard. An award of such costs would compensate Blizzard for discrete, limited, out-of-pocket costs. *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 U.S. Dist. LEXIS 112730, *40 (S.D. Fla. July 1, 2008) ("Defendants should be awarded, as part of their attorney's fees award, their litigation costs which include reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients, so long as these costs are incidental and necessary to the litigation.").

### Conclusion

For the foregoing reasons, the Court should award Blizzard (1) **$13,853** in attorneys' fees in connection with the right of publicity claims; (2) **$153,646.50** in attorneys' fees in connection with the copyright claims; and (3) **$4,198.59** in nontaxable costs.

Dated: November 21, 2013                    MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Marc E. Mayer
    Attorneys for Defendants
    Activision Blizzard, Inc. and Blizzard
    Entertainment, Inc.